## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) GMX RESOURCES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-47-D |
| | ) | |
| 1) THE BANK OF NEW YORK MELLON | ) | |
| TRUST COMPANY, N.A., as Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

## ORIGINAL COMPLAINT FOR
## DECLARATORY RELIEF AND REFORMATION

Plaintiff GMX Resources Inc. files this Original Complaint and would respectfully show as follows:

### I. PARTIES

1.      Plaintiff GMX Resources Inc. ("GMXR" or the "Company") is a corporation organized under the laws of the State of Oklahoma, with its principal place of business in the State of Oklahoma.

2.      Defendant The Bank of New York Mellon Trust Company, N.A., as Trustee, ("Trustee") is a national bank having trust powers, with its main office in the State of California.

### II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2).

### III. FACTUAL BACKGROUND

5.      In 2008, GMXR issued 5.00% Convertible Senior Notes due 2013 (the "2013 Notes"). The 2013 Notes were offered and sold to initial purchasers in a private placement with an offering memorandum, including a Description of Notes that summarized the terms of the 2013 Notes.

6.      The 2013 Notes were issued pursuant to an Indenture (the "2008 Indenture"), which reflected the terms previously included in the Description of Notes. Those terms included an antidilution formula for the conversion rate of the 2013 Notes in the case of stock splits, dividends, and combinations, which provided in the 2008 Indenture:

(a) If the Company, at any time or from time to time while any of the Securities are Outstanding, issues shares of its Common Stock as a dividend or distribution on shares of Common Stock, or if the Company effects a share split or share combination, then the Applicable Conversion Rate will be adjusted based on the following formula:

$$CR_1 = \frac{CR_0 \ x \ OS_1}{OS_0}$$

where

$CR_0$ = the Conversion Rate in effect immediately prior to the Ex-Dividend Date of such dividend or distribution, or the effective date of such share split or share combination, as applicable;

$CR_1$ = the Conversion Rate in effect immediately after the opening of business on such Ex-Dividend Date or effective date, as applicable;

2

$OS_0$ = the number of shares of Common Stock outstanding immediately **prior to** such Ex-Dividend Date or effective date, as applicable; and

$OS_1$ = the number of shares of Common Stock that would be outstanding immediately **after, and solely as a result of**, such dividend, distribution, share split or share combination. *[emphasis added]*

7.     In 2009, GMXR issued 4.50% Convertible Senior Notes due 2015 (the "2015 Notes"). The 2015 Notes were offered and sold in a registered, underwritten offering with a prospectus, including a Description of Notes that summarized the terms of the 2015 Notes.

8.     The initial draft of the Description of Notes was prepared by underwriters' counsel.[1] That initial draft was largely pulled from the Description of Notes terms of the 2013 Notes, other than pricing terms, but unfortunately, it contained an error in the antidilution formula that was then repeated in all subsequent documents.[2]

9.     Specifically, in making a non-substantive change to the formula, a portion of the formula was transposed. The antidilution formula was inadvertently copied and presented as:

$$CR_1 \quad = \quad CR_0 \quad x \quad \frac{OS_0}{OS_1}$$

---

[1] A copy of the initial draft prepared by underwriters' counsel is attached as **Exhibit 1**. *See* **Exhibit 1**, at p. 38.

[2] The 2015 Notes were later issued pursuant to a base Indenture (the "2009 Indenture") and a Supplemental Indenture (the "2009 Supplemental Indenture"), which merely copied the terms set forth in the Description of Notes, including the scrivener's error in this antidilution formula. A copy of the 2009 Supplemental Indenture is attached as **Exhibit 2**.

when it should have been:

$$CR_1 \quad = \quad CR_0 \quad \text{x} \quad \frac{\mathbf{OS_1}}{OS_0}$$

The numerator and denominator were mistakenly switched or inverted.

10.     All of the definitions of the terms relating to the formula (*e.g.*, the definitions of $CR_0$, $CR_1$, $OS_0$, $OS_1$) in the initial 2015 Notes draft were substantially the same as the 2013 Notes, and there can be no legitimate dispute that the parties intended that the formula in the 2015 Notes and the 2009 Supplemental Indenture would be the same. Indeed, there is no evidence that any party to the 2009 transaction intended to invert or change the formula, nor is there any evidence of a discussion of the formula *at all*.[3]

---

[3] The defined terms for the final Description of Notes and Supplemental Indenture for the 2015 Notes later included other changes that did not change the substance of the formula. The final 2015 Note Indenture formula was:

(a)     If the Company exclusively issues shares of its Common Stock as a dividend or distribution on shares of Common Stock, or if the Company effects a share split or share combination, then the Conversion Rate shall be adjusted based on the following formula:

$$CR_1 \quad = \quad CR_0 \quad \text{x} \quad \frac{OS_0}{OS_1}$$

where,

$CR_0$ =     the Conversion Rate in effect immediately prior to the open of business on the Ex-Dividend Date of such dividend or distribution, or immediately prior to the open of business on the effective date of such share split or share combination, as applicable;

$CR_1$ =     the Conversion Rate in effect immediately after the open of business on such Ex-Dividend Date or effective date;

$OS_0$ =     the number of shares of Common Stock outstanding immediately prior to the open of business on such Ex-Dividend Date or effective date; and

11.     The inversion of the numerator and denominator create a dilutive event in what was to be an anti-dilutive provision. Thus, in a simple 2-for-1 stock split, the conversion rate of the 2015 Notes would adjust by a factor of 1/2 (rather than 2), and in a 1-for-2 reverse stock split (by definition an anti-dilutive event) the conversion rate would adjust by a factor of 2 (rather than 1/2). The result of the erroneous formula is a *clearly unintended and unreasonable windfall* in the event of a reverse split or share combination. Similarly, the erroneous formula would result in a *clearly unintended and unreasonable adverse effect* on holders of 2015 Notes in the event of an ordinary stock split or stock dividend.

12.     The scrivener's error in the antidilution formula in the 2009 Supplemental Indenture was not identified until December 31, 2012.

13.     At the time the error was discovered, a Certificate of Amendment had already been filed with the Secretary of State of Oklahoma on December 18, 2012, which provided for a **reverse** stock split of 13-to-1, effective at 5:00 p.m. Oklahoma City time on January 3, 2013 (the "Reverse Stock Split").[4]

---

$OS_1$ =  the number of shares of Common Stock outstanding immediately after giving effect to such dividend, distribution, share split or share combination.

*See* **Exhibit 2** at pp. 24-25.

[4] The Form 8-K filed on December 19, 2012 is attached as **Exhibit 3**.

14.   Because the Certificate of Amendment had been filed, GMXR had no ability to cancel the Reverse Stock Split.[5] GMXR did, however, promptly provide notice that it was adjusting the conversion rate to correct the scrivener's error. GMXR discussed the error with the Trustee on January 2, 2013 and January 3, 2013 in connection with draft certificates and notices of adjustment to the Trustee for the Reverse Stock Split, and GMXR filed a Form 8-K with the SEC and sent notices to the Trustee and the holders of the 2015 Notes on January 4, 2013 acknowledging the scrivener's error and the effect on the Conversion Rate applying the intended formula.[6]

15.   The trading price of the Company's common stock ***increased*** from approximately $0.54 immediately prior to the Reverse Stock Split to $7.02 (*i.e.*, $0.54 x 13) immediately after the Reverse Stock Split. All antidilution formulas are intended to have, and should have, a corresponding effect on a conversion rate resulting after the event. Were the Reverse Stock Split to be considered a triggering event using the erroneous formula, then the holders, instead of being entitled to a conversion rate of 4.1026 shares per $1,000 of notes under the proper formula, would instead receive 693.3329 shares per $1,000 of notes, a patently incredible result. Accordingly, the implied conversion price would be ***reduced*** from $18.75 (1,000/53.3333) (*i.e.*, a price

---

[5] Prior to December 2012, there had been no stock splits, dividends, or combinations that would implicate the provision containing the scrivener's error. Thus, the January 3 Reverse Stock Split was the first transaction that would trigger application of the erroneous formula.

[6] The Form 8-K filed on January 4, 2013 with the SEC is attached as **Exhibit 4**. Copies of the officer's certificate to the Trustee and notice sent to the holders are attached as **Exhibits 5 and 6**, respectively.

substantially *out-of-the money* prior to the Reverse Stock Split) to $1.44 (1,000/693.3329) under the incorrect formula (*i.e.*, a price substantially *in-the-money* after the Reverse Stock Split), again a patently absurd result and clearly not the intent for an "antidilution" protection.

16.     Since the announcement and notices of the scrivener's error were sent out by GMXR (which announcement and notices expressly and publicly identified the error in the formula), the markets for both the 2015 Notes and the common stock have remained steady, a clear indication that the markets view this error as just that, an error, nothing more, and have not given effect to or otherwise relied upon it in valuing either the Notes or the Company's shares.[7]

17.     Section 7.01 of the 2009 Supplemental Indenture permits GMXR and the Trustee to modify or amend the Indenture or the Notes without consent of the holders in very limited circumstances.

18.     The circumstances pursuant to which GMXR and the Trustee may amend the 2009 Supplemental Indenture in accordance with Section 7.01 of the 2009 Supplemental Indenture are not present here, and the GMXR and the Trustee cannot agree to a unilateral correction and amendment of the 2009 Supplemental Indenture.

---

[7] In the prior relevant period, *i.e.*, the period between December 19, 2012 when the Reverse Stock Split was announced through January 3, 2013 (the last full trading day before the Reverse Stock Split was effective), (a) the 2015 Notes were trading in the range of $[441] to $[480] per $1,000 principal amount and (b) GMXR common stock was trading in the range of $0.47 to $0.61 per share.  From January 4, 2013 (the first trading day after the Reverse Stock Split was effective) to January 10, 2013, (a) the 2015 Notes do not have any reported trading and (b) GMXR common stock has traded in the range of $6.30 to $7.79 per share.

Case 5:13-cv-00047-D   Document 1   Filed 01/11/13   Page 8 of 10

19.     Thus, GMXR has advised the Trustee that it would be filing this action to seek a declaratory judgment and reformation of the 2015 Notes and the 2009 Supplemental Indenture to correct the scrivener's error in the antidilution formula. The Trustee has advised GMXR that it has no objection to GMXR seeking judicial intervention.

## IV. CLAIMS FOR RELIEF[8]

20.     GMXR restates and incorporates by reference each and every allegation in paragraphs 1 through 19 as if fully set forth here.

21.     GMXR is entitled to reformation of the formula set forth in Section 4.04(a) of the 2009 Supplemental Indenture to make that provision consistent with the parties' express intent. Under New York law, a Court may supply what the parties clearly intended to provide in the 2009 Supplemental Indenture, but which, because of a scrivener's error, the written agreement did not reflect.[9] Thus, GMXR seeks reformation of the 2009 Supplemental Indenture to provide that the proper formula is and has always been:

$$CR_1 \quad = \quad CR_0 \quad x \quad \frac{OS_1}{OS_0}$$

---

[8] The 2009 Indenture and the 2009 Supplemental Indenture both provide for the application of the laws of the State of New York. Therefore, these claims for relief arise under New York law.

[9] GMXR expects that the evidence will show that the parties involved in drafting the Description of Notes relating to the 2015 Notes and the subsequent documents, including the 2009 Supplemental Indenture, will acknowledge that the scrivener's error was the result of a mutual mistake and the erroneous formula was not what the parties intended.

22.    GMXR is also entitled to a declaration that it appropriately calculated the conversion rate adjustment in connection with the Reverse Stock Split on January 3, 2013. As a result, effective after 5:00 p.m. on January 3, 2013, the Conversion Rate was 4.1026 shares of Common Stock per $1,000 aggregate principal amount of Securities, based on the following calculation (pursuant to the corrected formula):

$$4.1026 \quad = \quad 53.3333 \quad x \quad \frac{7,587,734}{98,640,548}$$

## V. DEMAND

WHEREFORE, PREMISES CONSIDERED, Plaintiff GMX Resources Inc. demands that Defendant be cited to appear and answer, and that Plaintiff have judgment for the following:

(a)    a declaration that the 2009 Supplemental Indenture is reformed to reflect the correct formula at Section 4.04(a) of:

$$CR_1 \quad = \quad CR_0 \quad x \quad \frac{OS_1}{OS_0}$$

(b)    a declaration that GMXR appropriately applied the intended formula in connection with the Reverse Stock Split, and therefore effective after 5:00 p.m. on January 3, 2013, the Conversion Rate was 4.1026 shares of Common Stock per $1,000 aggregate principal amount of Securities; and

(c)    such other and further relief as the Court may deem just and equitable.

DATED:  January 11, 2013.

Respectfully submitted,

s/Mack J. Morgan III
MACK J. MORGAN III, OBA #6397
CROWE & DUNLEVY
20 N. Broadway, Suite 1800

9

Oklahoma City, Oklahoma 73102
(405) 235-7727
(405) 272-5235 (Facsimile)
mack.morgan@crowedunlevy.com

**ATTORNEY FOR PLAINTIFF GMX
RESOURCES INC.**

2406572.01